**IT IS SO ORDERED.**

**Dated: 10:04 AM October 18 2007**

MARILYN SHEA-STONUM
U.S. Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CASE NO. 05-81475 |
| | ) | |
| THOMAS AND YASMEN ABDALLAH., | ) | CHAPTER 7 |
| | ) | |
| DEBTOR(S) | ) | |
| | ) | ADVERSARY NO. 06-5175 |
| BROADWAY BANK, | ) | |
| | ) | JUDGE MARILYN SHEA-STONUM |
| PLAINTIFF(S), | ) | |
| | ) | **MEMORANDUM OPINION RE:** |
| vs. | ) | **PLAINTIFF'S MOTION FOR** |
| | ) | **SUMMARY JUDGMENT** |
| THOMAS ABDALLAH, ET AL. | ) | **[DOCKET #41]** |
| | ) | |
| DEFENDANT(S). | ) | |

On August 8, 2006, Broadway Bank filed a complaint objecting to the dischargeability of indebtedness owed to Broadway Bank by Thomas Abdallah ("Abdallah") and Yasmen Abdallah ("Mrs. Abdallah," and together with Abdallah, the "Defendants") pursuant to section 523(a)(2)(A) and (6) of the Bankruptcy Code. The Court granted Broadway Bank

leave to file a motion for summary judgment and the Defendants leave to file a response thereto [docket #22]. Broadway Bank's motion for summary judgment [docket #41] was timely filed. The Defendants have not filed any response to that motion. After the expiration of the filing deadlines, the matter was taken under advisement.

This proceeding arises in a case referred to this Court by the Standing Order of Reference entered in this District on July 16, 1984. It is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(A) and (I) over which this Court has jurisdiction pursuant to 28 U.S.C. §§1334(b), 157(a) and 157(b).

A court shall grant a party's motion for summary judgment "if...there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); FED. R. BANKR. P. 7056. The party moving for summary judgment bears the initial burden of showing the court that there is an absence of a genuine dispute over any material fact, *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)), and, upon review, all facts and inferences must be viewed in the light most favorable to the nonmoving party. *Searcy v. City of Dayton*, 38 F.3d 282, 285 (6th Cir. 1994); *Boyd v. Ford Motor Co.*, 948 F.2d 283, 285 (6th Cir. 1991), *cert. denied*, 503 U.S. 939 (1992). However, the ultimate burden of demonstrating the existence of a genuine issue of material fact lies with the non-moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Even though the Defendants failed to file a response to Broadway Bank's motion for summary judgment, that motion cannot be granted simply for Defendants' failure to respond. *See The Huntington Nat'l Bank v. Parton (In re Parton)*, 137 B.R. 902, 905 (Bankr. S.D. Ohio 1991). Instead, this Court must review the motion for summary judgment to determine

whether Broadway Bank has discharged its burden relative to that pleading. *Id.* However, where a non-moving party fails to respond to a motion for summary judgment, the court need not search the record to establish an absence of a genuine issue of material fact. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989). Rather, the court may rely upon the facts presented and designated by the movant, *Guarino v. Brookfield Township Trs.*, 980 F.2d 399, 404 (6th Cir. 1992), bearing in mind that any inferences drawn from these facts still must be considered in the light most favorable to the non-movant. *In re Parton*, 137 B.R. 902, 905 (Bankr. S.D. Ohio 1991).

Broadway Bank is seeking summary judgment against the Defendants on Count I of its complaint. Count I alleges that Defendants obtained money from Broadway Bank as a result of Defendants' failure to disclose material information and affirmative material misrepresentations that, at the time, the Defendants knew were false or were made with gross recklessness to their truth, and Broadway Bank justifiably relied on those representations and, as a result, suffered losses. In support of its motion for summary judgment, Broadway Bank relies on the stipulations filed with the Court [docket # 24] (the "Stipulations")[1] and the affidavit of Demetris Giannoulias, attached as Exhibit B to the Motion for Summary Judgment. The Court incorporates the Stipulations. A copy of the Stipulations without exhibits is attached to this Opinion as Exhibit 1. Capitalized terms not otherwise defined in this Opinion have the meaning ascribed to them in the Stipulations. Based on the Stipulations the Court finds there is no genuine issue of material fact and as a matter of law, the Debt owed by Abdallah to Broadway Bank is not dischargeable pursuant to § 523(a)(2). In

---

[1] At a pre-trial conference held on March 21, 2007, Mr. Major, counsel of record for the Defendants at that time, stated that he had authority from his clients to join in the Stipulations and that he did join in them on his clients' behalf.

contrast, the Court finds Broadway Bank failed to discharge its burden on summary judgment regarding its claim against Mrs. Abdallah.

The relevant portion of the Bankruptcy Code reads as follows:

> **11 USC § 523  Exceptions to discharge**
>
> > (a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt -
> > ...
> > (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained, by -
> > (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

To establish a prima facie case under § 523(a)(2)(A), the creditor must demonstrate that:

> (1) the debtor obtained money through a material misrepresentation that, at the time, the debtor knew was false or made with gross recklessness to its truth;
> (2) the debtor intended to deceive the creditor;
> (3) the creditor justifiably relied on the false representation; and
> (4) its reliance was the proximate cause of the loss.

*Field v.* Mans, 516 U.S. 59, 116 S.Ct. 437, 439 (1995); *Rembert v. AT&T Universal Card Servs., Inc. (In re Rembert)*, 141 F.3d 277, 280-81 (6th Cir. 1998).

**Material Misrepresentations**

Prior to entering into the Loan Documents with Broadway Bank, Abdallah entered into the Purported Contracts, contracts, titled as land installment contracts, with Mr. Sammur and Mr. Abuaun. Mrs. Abdallah did not sign the Purported Contracts. The Purported Contracts were never recorded with the appropriate county recorder. Neither the Defendants nor their counsel in the loan transaction, Mr. George, disclosed the existence of these Purported Contracts to Broadway Bank. Broadway Bank was not aware of the Purported Contracts before the execution of the Loan Documents. Stipulations, ¶ 40 and 41.

In addition, Defendants represented in the Loan Documents, including the Loan

-4-

Agreement, the Security Agreement and the Mortgages that they has "good title" to all of the subject properties, "free and clear of *all* Security Interests" and "free and clear of *all* liens and encumbrances." (emph. added). Stipulations, ¶¶ 42-44. Abdallah, having signed the Purported Contracts, knew at the time he made these representations and warranties to Broadway Bank that he had entered into the Purported Contracts with Mr. Abuaun and Mr. Sammur.

The failure to disclose the existence of the Purported Contracts constitutes a material misrepresentation, and the existence of the Purported Contracts makes the representation and warranties in the Loan Documents false. Therefore, the Court finds that Broadway Bank satisfied this element with respect to Abdallah.

The record is silent, however, with respect to Mrs. Abdallah's knowledge of the Purported Contracts. Therefore, the Court finds that Broadway Bank failed to satisfy this element with respect to Mrs. Abdallah and Broadway Bank is not entitled to summary judgment on Count 1 against Mrs. Abdallah. Based on this finding, the Court will not discuss the remaining elements with respect to Mrs. Abdallah.

**Intent to Deceive**

To prove its case under § 523(a)(2)(A), Broadway Bank must show that the Defendants intended to deceive Broadway Bank. Rarely is intent to deceive shown by direct evidence, and this case is no exception to that rule. However, intent can be inferred based on the totality of the circumstances See *Fifth Third Bank v. Collier (In re Collier)*, 231 B.R. 618, 623 (Bankr. N.D. Ohio 1999). In this instance, there is no reasonable explanation for Abdallah's failure to disclose the existence of the Purported Contracts other than his intent to deceive Broadway Bank. Therefore, the Court finds that Broadway Bank satisfied this

element with respect to Abdallah.

**Justifiable Reliance**

To prove its case under 523(a)(2)(A), Broadway Bank must show that it justifiably relied on the representations and warranties of the Defendants. Justifiable reliance is different from reasonable reliance. *Fellows, Read & Associates, Inc. V. Rieder, 194 B.R. 734 (S.D. NY 1996)* aff'd 116 F.3d 465 (2nd Cir. 1997). Justifiable reliance is a subjective standard; it is a less stringent standard in between actual reliance and reasonable reliance. *Id.* If a creditor has shown reasonable reliance, it has necessarily met the standard for justifiable reliance. *In re Tallant*, 218 B.R. 58 (Bankr. 9th Cir. 1998). Therefore, this element is satisfied by the parties' stipulation that Broadway Bank "reasonably relied" on the representations and warranties made by the Defendants in the Loan Documents. Stipulations, ¶ 45.

**Damages as a Result of Such Reliance**

Broadway Bank is seeking a judgment from this Court that the "Debt" owed by the Defendants to Broadway Bank is not dischargeable. The Debt is defined as Broadway Bank's deficiency claim against the Defendants after application of the Credit Bid to the Judgment, including, *inter alia*, attorneys fees incurred by Broadway in defending its priority position in the Gas Stations. The total amount of the Debt was $5,109,332.99 at the time Broadway Bank's assignee filed a proof of claim. *See* Exhibit C to the Summary Judgment Motion. The uncontested Affidavit of Demetris Giannoulias says that Broadway Bank relied upon the representations and warranties in making the loans to the Defendants. Affidavit ¶ 2. If Broadway Bank had been aware of the Purported Contracts, it would not have made the loans. Affidavit ¶ 3. Broadway Bank has incurred damages as set forth in Exhibit C to the Motion for Summary Judgment. Affidavit ¶ 4. The uncontested evidence shows damages in the

-6-

amount of $5,109,332.99 as a result of Broadway Bank's reliance on the representations and warranties.

Broadway Bank has proven each element required to establish a prima facie case for nondischargeability pursuant to 11 U.S.C. 523(a)(2)(A) against Abdallah. Therefore, the Motion for Summary Judgment is granted against Abdallah- the Debt owed by him is not dischargeable.

A further pre-trial conference shall be held, for the purpose of discussing the remaining claims against the Defendants, on **October 24, 2007 at 1:30 p.m.**

###

cc: (via Electronic Mail)

Daniel Demarco, counsel for Broadway Bank
James Major, counsel for Defendants

(via U.S. Mail)
Thomas and Yasmen Abdallah

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF OHIO (AKRON)

| | | |
|---|---|---|
| In re: | ) | Case No. 05-81475 |
| | ) | |
| **THOMAS AND YASMEN ABDALLAH,** | ) | Judge Marilyn Shea-Stonum |
| | ) | |
| Debtors. | ) | Chapter 7 |
| ---------------------------------------------------- | ) | |
| **BROADWAY BANK,** *et al.* | ) | Adv. Proc. No. 06-05175 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **THOMAS ABDALLAH,** *et al.,* | ) | |
| | ) | |
| Defendants. | ) | |

### JOINT STIPULATIONS OF FACT AMONG THE PARTIES

### I.   The Abdallah Loan

1.   On September 5, 2003, Thomas Abdallah ("T. Abdallah"), Yasmen Abdallah ("Y. Abdallah" and together with T. Abdallah, the "Defendants") and North Coast Oil, Inc. ("NCO"), AP Investment Properties, LLC ("AP"), Ray's Discount Drug, Inc. ("Ray's"), A&H Marathon, Inc. ("A&H"), Fairview Marathon ("Fairview"), and North Olmsted Oil Company ("NOO" and together with the NCO, AP, Ray's, A&H, Fairview and NOO, the "Corporate Borrowers") entered into a secured commercial loan with Broadway in the original principal amount of $10,500,000 generally for the purpose of purchasing and refinancing various gas stations and other businesses throughout the State of Ohio.

2.   The Loan was properly secured and duly perfected by first priority mortgages, security interests and other liens in and to substantially all of the Defendants' and Corporate Borrowers' assets, including without limitation certain gas station/convenience store properties.

CLE - 996840.4

06-05175-mss    Doc 42    FILED 10/18/07    ENTERED 10/18/07 12:29:45    Page 8 of 16

3. The loan is evidenced by a Business Loan Agreement (the "<u>Loan Agreement</u>") and a Promissory Note (the "<u>Note</u>") (the indebtedness evidenced by the Loan Agreement and Note is referenced herein as the "<u>Loan</u>").

4. True and correct copies of the Loan Agreement and Note are attached hereto as <u>Exhibits 1 and 2</u>.

5. The Loan Agreement and Note were secured by certain Open-End Mortgages (collectively, the "<u>Mortgages</u>")[1] and other leasehold mortgages, Assignments of Rent ("<u>Assignments</u>") and the collateral more specifically described in the Commercial Security Agreement (the "<u>Security Agreement</u>"). Each of the Loan Agreement, Note, Mortgages, Assignments of Rent and the Security Agreement are dated September 5, 2003 and shall be referenced collectively herein as the "<u>Loan Documents</u>".

6. A true and correct copy of the Security Agreement is attached hereto as <u>Exhibit 3</u>.

7. The Loan was secured by virtually all of the real property and personal property of the Debtors and the proceeds generated by such property or from the sale or disposition of that property.

8. Debtors owned thirty (30)[2] of the thirty-four (34) gas stations they operated (collectively, the "<u>Gas Stations</u>"), a commercial property with a peanut shop and a convenience store and pharmacy (collectively, the "<u>Pharmacy</u>"), a shopping center (the "<u>Mall</u>" and together with the Gas Stations and the Pharmacy, the "<u>Businesses</u>") and the personal residence of Defendants and certain other rental residential properties (collectively, the "<u>Residences</u>" and together with the Businesses, the "<u>Real Property</u>").

---

[1] The Mortgages and Assignments associated with the Disputed Gas Stations (as defined herein) are attached as described herein. Due to the voluminous nature of the Mortgages and Assignments, the remaining Mortgages and Assignments, which are virtually identical have not been attached. Complete copies of the Mortgages and Assignments are available upon request.

9. In addition, all other property of the Defendants and Corporate Borrowers (including receivables, good will, inventory and equipment) (collectively, the "Collateral" and together with the Real Property, the "Property") secured the Loan.

10. True and correct copies of the UCC-1 Financing Statements perfecting the security interest in the Collateral securing the Loan are collectively attached hereto as Exhibit 34.

11. The Property that comprised the property of the Defendants' bankruptcy estate was (a) the real property where the Pharmacy, the Residences and the Mall (six real properties altogether) were located, and (b) Defendants' personal property.

## II. The Abdallah Judgment

12. Prior to May 13, 2005, the Defendants and Corporate Borrowers defaulted on the Loan and Broadway, in accordance with the terms of the loan, accelerated the amounts due.

13. On or about May 13, 2005, the Summit County Court of Common Pleas entered a cognovit judgment (the "Judgment") in favor of Broadway and against each of the Defendants and Corporate Borrowers, jointly and severally, in the amount of $11,917,239.37, plus late charges, default interest, and other obligations together with interest at the rate of 18% per annum from the date of the Judgment pursuant to the defaults under the Loan.

14. The Judgment is final.

15. A true and correct copy of the Judgment is attached hereto as Exhibit 40.

16. The Judgment is secured by certificates of judgment lien filed in Summit County, Ohio on May 23, 2005 and in sixteen other Ohio counties between July 21, 2005 and July 27, 2005.

---

[2] Four (4) gas station sites were leased.

### III. The Abdallah Bankruptcy

17. On December 2, 2005 (the "Corporate Petition Dates"), the Corporate Borrowers filed chapter 7 bankruptcy petitions.

18. On December 13, 2005 (the "Individual Petition Date" and together with the Corporate Petition Dates, the "Petition Dates"), Defendants filed their chapter 7 bankruptcy petition with this Court.

19. On April 13, 2006, the Chapter 7 Trustee for the Defendants filed *Trustee's Motion for Order (A) Granting Authority for the Sale of Assets Pursuant to § 363(b); (B) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection with Such Sale and Determining and Adjudicating Cure Amounts with Respect to Such Contracts and Leases Pursuant to § 365; (C) Establishing Bidding Procedures; (D) Setting Date for Auction and Hearing on Approval of Sale of Assets; (E) Approving For of Notice; and (F) Waiving the Ten-Day Period Provided by Bankruptcy Rules 6004(h) and 6006(d)* [NCO Docket No. 71 and Bankruptcy Case Docket No. 91] (the "Sale Motion") seeking to sell the Property.

20. On May 23, 2006, Broadway or its assignee(s) submitted a credit bid [NCO Docket No. 145 and Bankruptcy Case Docket No. 157] (the "Credit Bid") for the Property in the amount of $9,500,000. A true and correct copy of the Sale Order is attached hereto as Exhibit 41.

21. On May 24, 2006, the Bankruptcy Court entered an order (the "Sale Order") approving the Sale Motion and the sale of the Property to Broadway or its assignee(s) by virtue of its Credit Bid.[3]

---

[3] Broadway's assignee is GG Real Estate, LLC.

22. After application of the Credit Bid to the Judgment, there remains due and owing to Broadway by Defendants and Corporate Borrowers a deficiency claim in the amount of $2,417,239.37 plus 18% interest from the date of Judgment through the Individual Petition Date, plus interest as permitted by law thereafter, plus costs of collection (including charges of a receiver and sums paid to the Chapter 7 trustee), plus attorneys' fees and costs, among other charges (collectively, the "Indebtedness").

### IV. The Prepetiton Conduct At Issue

23. The Gas Stations that secured the Loan included five (5) Gas Stations relevant to this Adversary Proceeding. These five (5) Gas Stations are located at 800 S. Prospect Street, Ravenna, Ohio (the "Prospect Property") owned by one of the Corporate Borrowers controlled by the Defendants, AP; 8247 Mayfield Road, Chesterland, Ohio (the "Mayfield Property") and 14030 State Road, North Royalton, Ohio (the "State Road Property" and together with the Mayfield Property, the "AP Property") owned by one of the Corporate Borrowers controlled by Defendants, AP; and 3474 W. 25th St., Cleveland, Ohio (the "25th Street Property") and 15222 Waterloo, Cleveland, Ohio (the "Waterloo Property" and together with the 25th Street Property, the "NCO Property") owned by one of the Corporate Borrowers, NCO.

24. Specifically, the "Disputed Gas Stations" refers collectively to the Prospect Property, the AP Property and the NCO Property.

#### A. The Prospect Property

25. True and correct copies of the Mortgage (the "Prospect Mortgage"), the Assignment of Rents (the "Prospect Assignment"), the UCC Fixture Filing (the "Prospect Fixture Filing"), the title policy (the "Prospect Title Policy"), the survey report (the "Prospect Survey Report") and the Deed (the "Prospect Deed") transferring the Prospect Property to AP associated with the Prospect Property are attached hereto as Exhibits 4 – 9, respectively.

5

26.     On or about November 20, 2002, Debtor "Tom Abdallah or Nominee" entered into a purported land installment contract (the "Sammur Document") with Sata Sammur ("Sammur") to permit Sammur to purchase the Prospect Property.

27.     As of November 20, 2002 neither T. Abdallah nor any entity he owned or controlled held any recorded interest in the Prospect Property.

28.     A true and correct copy of the Sammur Document is attached hereto as Exhibit 35.

29.     T. Abdallah and Sammur performed the Sammur Document.

30.     On or about September 8, 2003, a corporate entity controlled by Defendants, AP, acquired the fee interest in the Prospect Property.

31.     On September 13, 2003 Sammur and "T. Abdallah or nominee" entered into a second purported land installment contract (the "Second Sammur Document"). A true and correct copy of the Second Sammur Document is attached hereto as Exhibit 42.

### B.     The AP Property

32.     True and correct copies of the Mortgage (the "Mayfield Mortgage"), the Assignment of Rents (the "Mayfield Assignment"), the UCC Fixture Filing (the "Mayfield Fixture Filing"), the title policy (the "Mayfield Title Policy"), the survey report (the "Mayfield Survey Report") and the Deed (the "Mayfield Deed") transferring the Mayfield Property to AP associated with the Mayfield Property are attached hereto as Exhibits 10 – 15, respectively.

33.     True and correct copies of the Mortgage (the "State Road Mortgage"), the Assignment of Rents (the "State Road Assignment"), the UCC Fixture Filing (the "State Road Fixture Filing"), the title policy (the "State Road Title Policy"), the survey report (the "State Road Survey Report") and the Deed (the "State Road Deed") transferring the State Road

Property to AP associated with the State Road Property are attached hereto as <u>Exhibits 16 – 21, respectively</u>.

34. On or about August 8, 2003, Debtor "Tom Abdallah or Nominee" entered into a purported land installment contract (the "<u>Abuaun Document</u>") with "Abuaun Brothers or Nominee" (the "<u>Abuauns</u>") to sell the AP Property to the Abuauns. A true and correct copy of the Abuaun Document is attached hereto as <u>Exhibit 36.</u>

35. On the date AP and/or the Abuauns obtained possession of the Mayfield Property, one of the Abuauns initialed the Clark Conversion Day Sign-Off Sheet and Supplemental Settlement Statement, a true and correct copy of which is attached hereto as <u>Exhibit 37</u>.

36. AP did not have title to the Mayfield Property until August 19, 2003 and the State Road Property until August 14, 2003.

### C. The NCO Property

37. True and correct copies of the Mortgage (the "<u>Waterloo Mortgage</u>"), the Assignment of Rents (the "<u>Waterloo Assignment</u>"), the UCC Fixture Filing (the "<u>Waterloo Fixture Filing</u>"), the title policy (the "<u>Waterloo Title Policy</u>"), the survey report (the "<u>Waterloo Survey Report</u>") and the Deed (the "<u>Waterloo Deed</u>") transferring the State Road Property to AP associated with the Waterloo Property are attached hereto as <u>Exhibits 22 – 37, respectively</u>.

38. True and correct copies of the Mortgage (the "25th <u>Street Mortgage</u>"), the Assignment of Rents (the "25th <u>Street Assignment</u>"), the UCC Fixture Filing (the "25th <u>Street Fixture Filing</u>"), the title policy (the "25th <u>Street Title Policy</u>"), the survey report (the "25th <u>Street Survey Report</u>") and the Deed (the "25th <u>Street Deed</u>") transferring the State Road Property to AP associated with the 25th Street Property are attached hereto as <u>Exhibits 28 – 33, respectively</u>.

39. On or about September 13, 2003, after Defendants entered into the Loan, "Tom Abdallah or Nominee" entered into a purported land installment contract (the "Second Abuaun

7

Document") with the Abuauns to sell the NCO Property to the Abuauns. A true and correct copy of the Second Abuaun Document is attached hereto as Exhibit 38.

### D. The Representations Concerning the Disputed Gas Stations

40. The Sammur Document, the Abuaun Document and the Second Abuaun Document (collectively, the "Purported Contracts") were never recorded with the appropriate County recorder.

41. Prior to the execution of the Loan Documents on September 5, 2003, Broadway had no knowledge of any of the Purported Contracts.

42. In each of the Mortgages associated with the Disputed Gas Stations, Defendants represented that

> WARRANTY; DEFENSE OF TITLE. The following provisions relating to ownership of the [Disputed Gas Stations] are a part of this Mortgage:
>
> *Title.* Grantor warrants that: (a) Grantor holds good and marketable title of record to the [Disputed Gas Stations] in fee simple, free and clear of all liens and encumbrances other than those set forth in the Real Property description or in any title insurance policy, title report, or final title opinion issued in favor of, and accepted by, Lender in connection with this Mortgage, …

*See* Mortgages to Disputed Gas Stations, pp. 3 – 4.

43. In the Loan Agreement, the Defendants represented and warranties that they had "good title to all of the [Defendants' and Corporate Borrowers'] properties free and clear of all Security Interests [as defined in the Loan Agreement]" among other similar representations and warranties. *See* Loan Agreement, p. 3 attached hereto as Exhibit 1.

44. Defendants represented and warranted that they held "good and marketable title to the Collateral, free and clear of all liens and encumbrances". *See* Security Agreement, p. 2 attached hereto as Exhibit 3.

8

45.  Broadway reasonably relied upon the representations and warranties made by Defendants in the Loan Documents.

| | |
|---|---|
| /s/ Per Mr. Major's representation at the 3/21/07 Pretrial Conference, as memorialized in the Court's Order and Memorandum of Pre-Trial Conference held on March 21, 2007 and as sent to Mr. Major on 3/22/2007 | /s/ Daniel A. DeMarco |
| James L. Major, Esq.<br>3505 E. Royalton Road #165<br>Broadview Heights, OH 44147<br>Phone:   440.746.3700<br>Fax:       440.746.0343<br>E-mail:  jlm.manda@ix.netcom.com<br><br>*Attorney for Debtors* | Daniel A. DeMarco (#0038920)<br>Nancy A. Valentine (#0069503)<br>HAHN LOESER & PARKS LLP<br>200 Public Square<br>Suite 3300<br>Cleveland, Ohio 44114-2301<br>Telephone:   (216) 621-0150<br>Facsimile:    (216) 241-2824<br>E-mail:         dademarco@hahnlaw.com<br>                     navalentine@hahnlaw.com<br><br>*Attorneys for Plaintiffs Broadway Bank and GG Real Estate, LLC* |

Copies to:

The following parties were served by the Court's electronic noticing system:

- **Daniel A DeMarco**   dademarco@hahnlaw.com, hlpcr@hahnlaw.com
- **James L Major**   jlm.manda@ix.netcom.com, c_terlop@yahoo.com
- **Nancy A Valentine**   navalentine@hahnlaw.com, hlpcr@hahnlaw.com